C. Mark Kittredge (#013907)
MKittredge@perkinscoie.com
K. Reed Willis (#028060)
RWillis@perkinscoie.com
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
DocketPHX@perkinscoie.com
*Attorneys for Plaintiff and Counterdefendant*

John E. DeWulf/#006850
dewulf@rdp-law.com
Jennifer A. Stevens/#024655
jstevens@rdp-law.com
ROSHKA DEWULF & PATTEN, PLC
One Arizona Center
400 East Van Buren, Suite 800
Phoenix, AZ 85004
Telephone: 602-256-6100
*Attorneys for Defendant and Counterclaimant*

*Additional Attorneys for the Parties Identified on
Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Arizona Board of Regents for and on behalf of Arizona State University, | No. CV-14-00653-PHX-NVW |
| Plaintiff/Counterdefendant, | **JOINT REPORT OF COUNSEL AND** |
| v. | |
| Seattle Genetics, Inc., | **PROPOSED CASE MANAGEMENT PLAN** |
| Defendant/Counterclaimant. | |

Pursuant to the Court's May 21, 2014 Order, the Arizona Board of Regents for and on behalf of Arizona State University ("ASU") and Seattle Genetics, Inc. ("SeaGen) have conferred and prepared the following Proposed Case Management Plan.  The parties state as follows:

1.    **Attendees at Rule 26(f) Meeting:**  the following attended the Rule 26(f) meeting or assisted in developing the Plan:

- *Counsel for ASU*:  C. Mark Kittredge (Perkins Coie); K. Reed Willis (Perkins Coie)
- *Counsel for SeaGen*:  James G. Gilliland, Jr. and Bonnie M. Grant (Kilpatrick Townsend); John E. DeWulf and Jennifer A. Stevens (Roshka DeWulf).

2.    **Statement of the Case.**

*ASU's Statement of the Case*:  ASU filed the Complaint for Infringement of U.S. Patent No. 5,635,483 (the "'483 patent") on March 31, 2014.  ASU, through two of its professors, developed a novel, synthetic anti-cancer compound called Auristatin E ("AE").  ASU applied for, and was granted the '483 patent on June 3, 1997, which covers stereoisomers of AE and a number of related compounds.  ASU contends in its Complaint that SeaGen has infringed claims 2 and 4 of the '483 patent with its antibody-drug-conjugate ADCETRIS and the drug component thereof, monomethyl Auristatin E ("MMAE").  ASU further contends that SeaGen willfully infringes the '483 patent, and seeks exemplary damages and attorneys' fees.

SeaGen asserts no less than ten affirmative defenses and four overlapping counterclaims.  Its principal defense, that of "express license," is particularly flawed.  SeaGen took a license to four specific stereoisomers of AE covered by the '483 patent in 2000 (the "2000 License").  Four years later, SeaGen informed ASU that it had developed its own compound called monomethyl-Auristatin E ("MMAE"), that it did not believe MMAE came under either the 2000 License or the '483 patent and asked ASU to acknowledge the same.  ASU agreed with SeaGen that MMAE was not one of the

1  licensed stereoisomers , but also told SeaGen that MMAE was nonetheless covered by the

2  '483 patent.  ASU and SeaGen amended the 2000 License to acknowledge that MMAE

3  was not one of the four licensed stereoisomers and, therefore, SeaGen would not have to

4  pay "milestones and royalties," otherwise required by the license, for use of MMAE.

5  ASU and SeaGen did not agree, however, as to whether the '483 patent covered MMAE.

6  ASU maintained that the '483 patent covered MMAE.

7          SeaGen's laches, waiver and estoppel defenses are equally flawed.  Again, ASU

8  told SeaGen, when SeaGen requested the 2004 Amendment, that it believed the '483

9  patent covered MMAE.  SeaGen proceeded with its MMAE drug development efforts

10  anyway.  Moreover, under the patent statute SeaGen's drug development activities were

11  protected from any allegations of infringement until it received FDA approval of the drug.

12  See, 35 U.S.C. § 271(e); *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 208

13  (2005) ("the use of patented compounds in preclinical studies is protected under §

14  271(e)(1)" and does not infringe the subject patent).  Hence, ASU could not enforce the

15  '483 patent against SeaGen before SeaGen received FDA approval in August 2011 and

16  laches cannot apply to such activities.  See *Bio-Technology General Corp., v. Genentech,*

17  *Inc.*, 80 F.3d 1553, 1564-65 (Fed. Cir. 1996) (holding that use of patented compound for

18  research in support of FDA approval is non-infringing under 35 U.S.C. §271(e)(1) and

19  cannot be used to support a laches defense).

20          SeaGen's other defenses of invalidity and inequitable conduct are noise that will be

21  dealt with in due course, should SeaGen ever present actual evidence.  The law is simple,

22  however, the '483 patent is presumed to be valid and it is SeaGen's burden to prove

23  otherwise by clear and convincing evidence.

24          *SeaGen's Statement of the Case*: SeaGen denies that either ADCETRIS® or

25  MMAE directly or indirectly infringes any valid claim of the '483 patent.  Additionally,

26  ASU is barred by the doctrine of prosecution history estoppel from asserting that

27  ADCETRIS® or MMAE infringe claims 2 or 4 of the '483 patent under the doctrine of

28  equivalents.  SeaGen seeks a declaration that it does not infringe the '483 patent.

1    Additionally, ASU's claims are barred due to an express license to SeaGen.  On

2    February 3, 2000, SeaGen entered into a License with ASU under which ASU granted

3    SeaGen the exclusive right to all relevant chemical compounds claimed by the '483

4    patent.  In early 2004, SeaGen considered terminating the License because MMAE was

5    not covered by the '483 patent, and informed ASU of this fact.  Thereafter, in August

6    2004, the parties executed "Amendment No. 3" to the License, in which ASU

7    acknowledged that SeaGen "will not pay ASU any milestones or royalties with respect to

8    products utilizing or incorporating" MMAE and other compounds.  (*See,* Dkt. No. 10, Ex.

9    D, ¶ 1).  Either MMAE is different from the compounds recited in claims 2 and 4 of the

10   '483 patent,  in which case it does not infringe the '483 patent, or it is included in the

11   amended License.  In either case, ASU expressly agreed that no royalties are owed on

12   products including MMAE.

13   SeaGen further contends that ASU's claims are barred by the doctrines of laches,

14   estoppel, and waiver.  Despite knowing of SeaGen's use of MMAE for over 10 years,

15   ASU unreasonably delayed filing suit until 2014.  Further, SeaGen relied on ASU's

16   promises in Amendment No. 3 in choosing to proceed with MMAE as the cytotoxic agent

17   in ADCETRIS®.  As SeaGen's lead ADC candidate progressed towards FDA approval,

18   ASU did not dispute SeaGen's expressed understanding of Amendment No. 3, refuse the

19   payments under Amendment No. 3, or communicate any intention to sue SeaGen for

20   patent infringement.  Instead, ASU lay in wait while SeaGen spent nearly half a billion

21   dollars on development and approval of an ADC using MMAE as the cytotoxic agent.

22   Thus, SeaGen will be materially prejudiced if ASU is allowed to proceed with its claim of

23   patent infringement.

24   Moreover, SeaGen seeks a declaration of patent invalidity for failure to meet the

25   requirements of 35 U.S.C. §§101,102, 103, and 112.  For example, if the claims of the

26   '483 patent are expanded to cover ADCETRIS® and/or MMAE, the claims are invalid

27   under the first paragraph of 35 U.S.C. § 112 because they improperly encompass subject

28   matter that is not disclosed or enabled by the specification, and are invalid under the

1  second paragraph of 35 U.S.C. § 112 for failing to particularly point out and distinctly

2  claim the subject matter that the applicant regards as his invention with respect to the

3  scope of the compounds claimed by the '483 patent.

4  SeaGen contends that the '483 patent is unenforceable due to inequitable conduct

5  because ASU provided false biological activity data to the patent office which materially

6  impacted the scope of the claims of the '483 patent.

7  Finally, SeaGen seeks damages for breach of implied covenant of good faith and

8  fair dealing on account of ASU's bad faith filing of this lawsuit as well as a declaration

9  that this is an extraordinary case under 35 U.S.C. § 285.

10  **3.**     **Principal Factual and Legal Disputes**

11  *ASU's Statement of Factual and Legal Disputes:*

12  a.  Whether SeaGen infringes the '483 patent under the doctrine of equivalents;

13  b.  The amount of damages ASU is entitled to for such infringement;

14  c.  Whether ASU is entitled to exemplary damages for willful infringement by

15  SeaGen;

16  d.  Whether the asserted claims are invalid under 35 U.S.C. §§ 101, 102, 103 or

17  112 (i.e., whether SeaGen can prove invalidity by clear and convincing

18  evidence) or unenforceable for inequitable conduct (i.e., whether SeaGen

19  can prove ASU committed fraud on the patent office by clear and

20  convincing evidence);

21  e.  Whether SeaGen can maintain its defenses of license, laches, waiver and

22  estoppel.

23  *SeaGen's Statement of Factual and Legal Disputes:*

24  a.  Whether SeaGen directly infringes the '483 patent, either literally or under

25  the doctrine of equivalents;

26  b.  Whether ASU is barred by prosecution history estoppel from asserting that

27  ADCETRIS® or MMAE infringe claims 2 or 4 of the '483 patent under the

28  doctrine of equivalents;

c.  Whether SeaGen has contributed to or induced infringement of the '483 patent by others;

d.  Whether the patent claims asserted in this case are valid in view of the requirements of 35 U.S.C. § 101;

e.  Whether the patent claims asserted in this case are valid in view of prior art publications, patents, prior art systems, and/or commercial activities under 35 U.S.C. §§ 102 and 103;

f.  Whether the patent claims asserted in this case are valid in view of the written description and enablement requirements of the first paragraph of 35 U.S.C. § 112, and the requirements of the second paragraph of §112 to particularly point out and distinctly claim the subject matter that the applicant regards as its invention;

g.  Whether the patent claims asserted in this case are unenforceable due to inequitable conduct;

h.  Whether ASU's claims are barred in whole or in part by license, laches, estoppel, or waiver;

i.  Whether ASU breached the implied covenant of good faith and fair dealing by filing this lawsuit;

j.  Whether ASU is entitled to recover damages from SeaGen for any infringement and, if so, the amount of those damages and how they should be determined;

k.  Whether SeaGen is entitled to recover damages from ASU for any breach of the implied covenant of good faith and fair dealing and, if so, the amount of those damages and how they should be determined;

l.  Whether this case is exceptional under 35 U.S.C. § 285, or any other applicable provision, entitling SeaGen or ASU to costs and attorneys' fees.

**4.     Jurisdictional Basis.**

This Court has original subject matter jurisdiction over ASU's claim for patent infringement because the claims arise under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*  The Court has subject matter jurisdiction over ASU's claims under 28 U.S.C. §§ 1331 and 1338.  The Court has subject matter jurisdiction over SeaGen's counterclaims against ASU pursuant to 28 U.S.C. § 1367(a).

**5.      Parties that have not been Served or Appeared.**

None.

**6.      Potential Additional Parties or Amended Pleadings.**

Currently, the parties do not believe that there are additional parties or that amended pleadings will be necessary.  The parties believe that the Court's default deadline of 90 days after the Scheduling Conference (i.e., by October 23, 2014) is more than sufficient.

**7.      Contemplated Motions**

The parties contemplate filing the following motions:

   a) Joint Motion for Protective Order;

   b) Joint Motion for an ESI Order;

   c) Such other motions as may be warranted by developments in the case, such as motions under Federal Rules of Evidence 702, 703, 704, and 705, or a motion for attorneys' fees and costs for the prevailing party.

*ASU's Contemplated Motions*:

   a. Motion for summary judgment on SeaGen's affirmative defense of license;

   b. Motion for summary judgment on SeaGen's affirmative defense of laches, estoppel and waiver;

   c. Motion for summary judgment on SeaGen's affirmative defense of inequitable conduct;

   d. Motion for summary judgment on SeaGen's assertion of prosecution history estoppel.

   e. Motion for summary judgment on SeaGen's third counterclaim.

1    *SeaGen's Contemplated Motions*: SeaGen contemplates filing the following

2    motions:

3            a.   Motion for summary judgment on the affirmative defenses of laches,

4                 estoppel, and license;

5            b.   Motion for summary judgment of non-infringement; and

6            c.   Motion for summary judgment of invalidity.

7        **8.     Whether the Case is Suitable for Arbitration, Special Master, or a U.S.**

8    **Magistrate Judge for Trial.**

9        This case is not suitable for reference to arbitration or a United States Magistrate

10   judge for trial. However, as discussed in Paragraph 16 below, SeaGen believes that

11   appointing a special master or technical expert to resolve or assist in patent-related issues

12   may be helpful. ASU believes that SeaGen's proposed special master or technical expert

13   is not necessary and designed merely to add needless expense, procedure and delay.

14       **9.     Related Cases.**

15       There are no related cases currently pending in the United States between the

16   parties. However, this is not the parties' first dispute related to SeaGen's development

17   and use of ADCETRIS® or MMAE. In October 2012, SeaGen filed a declaratory

18   judgment action in the United States District Court for the Western District of

19   Washington, seeking a judgment that it did not infringe the '483 patent, asserting the same

20   license defense at issue here. In November 2012, ASU and Arizona Science and

21   Technology Enterprises LLC (collectively "the Arizona Institutions") initiated an

22   arbitration before the American Arbitration Association ("AAA"), contending that

23   SeaGen had violated the arbitration clause in the 2000 License by instituting suit in the

24   Western District of Washington and had "misuse[d] valuable know how and technology

25   (including materials), provided by Arizona State University to Seattle Genetics relating to

26   a powerful anti-cancer agent known as auristatin E." (Referred to herein as the

27   "Arbitration.") In turn, SeaGen asserted that the Arizona Institutions had breached the

28   implied covenant of good faith and fair dealing "by claiming SeaGen has used KNOW-

HOW and TECHNOLOGY of the Arizona Institutions in making MMAE." The parties engaged in discovery relating to the claims and defenses in the Arbitration. Eventually, the parties stipulated to a withdrawal of all claims, and the AAA dismissed the arbitratable claims with prejudice in September 2013. SeaGen's declaratory judgment action in the Western District of Washington was voluntarily dismissed while a motion to dismiss was pending.

Additionally, the parties are currently engaged in litigation in Italy in the Court of Turin, Commercial Chamber concerning whether SeaGen's ADCETRIS is covered by European patent No. 0600744 (EP '744), a foreign counterpart to the '483 patent. (Referred to herein as the "Italian Action.") The Italian Action additionally involves judicial review of supplementary protection certificate UB2013CCP1293 which, if upheld, would extend the patent term of EP '744 in Italy and may result in a decision on infringement. The action in Italy involves a different (albeit, related foreign counterpart) patent, foreign patent law and issues unique to extension of European patents.

**10.     Procedure and Timing for Initial Disclosures.**

The parties exchanged Initial Disclosures on July 3, 2014 pursuant to the Court's May 21, 2014 order.

**11.     Necessary Discovery and Proposed Changes to Discovery Limitations**

**a.   The extent, nature, and location of discovery anticipated by the parties.**

*Agreed Positions*:   The parties produced a significant number of documents relevant to this matter in the Arbitration. The parties agree that any pleadings and discovery from the Arbitration (i.e., document production, written discovery and responses thereto, depositions and exhibits, and expert reports or disclosures) may be treated as if already produced within the current litigation without re-production or service thereof. The parties agree that: (i) the protective order entered in the current action applies to the use of the discovery from the Arbitration; (ii) as an initial matter, discovery from the Arbitration will be entitled to the same confidentiality designations as originally produced in the Arbitration; (iii) however, each party reserves its right to challenge the

1    aforementioned confidentiality designations; and (iv) each party reserves any applicable

2    evidentiary objections to discovery from the Arbitration.

3         The parties disagree as to whether the Arbitration Panel's order dated September

4    12, 2013, concerning whether certain ASU documents are privileged, applies to the

5    current action. Unless the parties otherwise agree in writing, written discovery requests

6    and responses and depositions from the Arbitration and the Italian Action will not count

7    against any discovery limitations in the current action.

8         *ASU's Position*:  ASU has served 19  requests for production and a First set of

9    Interrogatories.  It plans to serve additional requests for production, interrogatories, and

10   take both personal and 30(b)(6) depositions.  ASU's discovery requests will include: (1)

11   SeaGen's use of Auristatin E; (2) SeaGen's development of mono-methyl Auristatin E;

12   (3) SeaGen's development and manufacture of ADCETRIS®; (4) the financial success of

13   ADCETRIS®; and (5) the ASU-SeaGen license agreement.  ASU believes that SeaGen

14   has in its possession the relevant documents and information, and currently does not

15   believe that it will need third party discovery.  Discovery will also involve current and

16   former employees of SeaGen.  ASU does not believe any changes to the discovery

17   limitations in the Federal Rules of Civil Procedure are warranted.

18        *SeaGen's Position*: SeaGen has served initial sets of Interrogatories and Requests

19   for Production on ASU.  It plans to serve additional requests for production,

20   interrogatories, and take both personal and 30(b)(6) depositions.  The subjects on which

21   SeaGen may seek discovery include, without limitation, (1) the relevant prior art including

22   patents and publications, as well as any public use or sale of prior-art products or systems

23   (i.e., invalidity under 35 U.S.C. §§ 102 and 103); (2) invalidity of the claims of the '483

24   patent for failing to meet the requirements of 35 U.S.C. §101; (3) invalidity of the claims

25   of the '483 patent due to insufficient written description and enablement of the

26   specification of the '483 patent (i.e., invalidity under the first paragraph of 35 U.S.C.

27   §112); (4) invalidity of the claims for failing to particularly point out and distinctly claim

28   the subject matter that the applicant regards as its invention (i.e., invalidity under the

second paragraph of 35 U.S.C. §112); (5) the development of any alleged invention claimed in the '483 patent; (6) any products that allegedly embody the '483 patent, including the marking of any such products pursuant to 35 U.S.C. §287; (7) the prosecution of the '483 patent and, specifically, the inequitable conduct that occurred during prosecution in providing false biological activity data to the patent office that materially impacted the scope of the claims of the '483 patent; (8) the scope of equivalents (if any) allegedly covered by the claims of the '483 patent; (9) the facts and circumstances related to the negotiation of, and agreement to enter into, the License and Amendment No. 3; (10) ABOR's unreasonable delay in bringing suit; and (11) ABOR's breach of the covenants of good faith and fair dealing in bringing the current action.

SeaGen's responsive documents are located in and around Bothell, Washington. SeaGen will make its fact witnesses available for deposition in Bothell, Washington. SeaGen will meet and confer with ABOR regarding a location for depositions of SeaGen's expert witness(es).

Notably, an important witness, Josef Barkoczy, one of the inventors named in the '483 patent, is located in Budapest, Hungary.  Therefore, international discovery likely will be needed.

b. **Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure.**

The number of depositions and interrogatories shall be as limited in Rules 30(a), 31(a), and 33(a)(1) of the Federal Rules of Civil Procedure.  Each side also may propound up to 40 requests for production of documents, including subparts, and up to 40 requests for admissions, including subparts.  The limitations set forth in this paragraph may be increased by mutual agreement of the parties.

c. **The number of hours permitted for each deposition, unless extended by agreement of the parties.**

Depositions in this case shall be limited to seven hours each as provided in Rule 30(d)(1) of the Federal Rules of Civil Procedure.  ASU proposes that each party is limited

to a total of 42 hours of depositions, including depositions conducted pursuant to Rule 30(b)(6) and excluding expert depositions.  SeaGen proposes that each party be limited to 70 hours of deposition, including for individual depositions, those conducted pursuant to Rule 30(b)(6), third party depositions and excluding expert depositions, and that each deposition is limited to seven hours unless the parties agree in writing otherwise.

**12.     Proposed Deadlines.**

The following table below sets forth the parties' competing proposals for the deadlines specified in this Court's May 21, 2014 Order.  (Dkt. 29.)  SeaGen proposes additional deadlines, including those SeaGen argues are particular to patent cases, in the Proposed Schedule attached as Exhibit A.  ASU believes such additional deadlines are unnecessary, needlessly complex and will only result in delay and increased expense.

| Event | ASU's Proposed Deadline | SeaGen's Proposed Deadline |
|---|---|---|
| Close of Fact Discovery | September 5, 2014 | May 5, 2015 |
| Deadline for Expert Reports on Issues for Which a Party Bears the Burden of Proof | September 19, 2014 | ASU's Opening Report: May 22, 2015; SeaGen's Opening Report: June 17, 2015 |
| Deadline for Rebuttal Expert Reports | October 3, 2014 | July 1, 2015 |
| Close of Expert Discovery including depositions | October 15, 2014 | July 18, 2015 |
| Deadline to File Dispositive Motions and Daubert Motions | October 31, 2014 | August 1, 2015 |
| Deadline for Good Faith Settlement Talks | November 14, 2014 | April 17, 2015 |

*ASU's Statement Regarding Case Schedule*:  The issues in this case are not complex and there is no need to add layers of procedure as urged by SeaGen.  The central issue is whether MMAE (the drug component of SeaGen's product ADCETRIS) infringes

1   the chemical compound defined in claims 2 and 4 of the '483 patent under the doctrine of
2   equivalents. There is no need for claim construction (or any of the eleven (11) related
3   calendar dates proposed by SeaGen) as the compound is fully, unambiguously defined by
4   the claims. Nor does SeaGen's shotgun blast of every imaginable defense justify delay.
5   SeaGen knows the facts with respect to its license and laches defenses; at most, the parties
6   need to confirm that relevant documents were produced in the AAA proceedings and take
7   a couple of depositions. Moreover, SeaGen's scientists have described themselves as "in
8   the top 0.1 or 0.01 percent" of those knowledgeable about the chemical compounds at
9   issue in this case. Those scientists know right now whether there is any prior art that can
10  be used to challenge the validity of the '483 patent. SeaGen does not need and should not
11  be given a schedule that allows it to delay presenting any such challenge.

12      *SeaGen's Statement Regarding Case Schedule*: In light of the complexity of the
13  issues involved in this matter, the magnitude of the claims asserted by ASU, the amount
14  of discovery required, and the significance of expert reports and testimony, SeaGen
15  believes the fastest this matter can be ready for trial, consistent with the interests of
16  justice, is late in the fall of 2015. While the parties engaged in discovery related to breach
17  of contract claims during the Arbitration, no discovery previously was undertaken
18  regarding patent infringement or validity or with respect to any of the affirmative defenses
19  asserted by SeaGen. The schedule proposed by ASU is unrealistic and unfair. It also is
20  unnecessary as the '483 patent has expired and the only remedy sought is the payment of
21  damages.

22      **13.    Jury Trial Request.**

23      A jury trial has been requested by both parties, and neither party contests the
24  other's request.

25

26

27

28

-13-

1    **14.    Estimated Trial Date and Length of Trial.**

2       *ASU's Proposed Trial Date and Length of Trial*: ASU proposes that the Court set a

3    trial date for December 15, 2014.  ASU estimates the trial will be no longer than five days.

4    ASU does not believe the trial can be shortened beyond this time period.

5       *SeaGen's Proposed Trial Date and Length of Trial*:  SeaGen proposes that this

6    Court hold a final pretrial conference in late October 2015.  SeaGen estimates that

7    between five and seven days will be required for trial.  As discussed in Paragraph 16

8    below, appointing a special master or technical expert to resolve or assist in patent-related

9    issues in advance of trial may result in shortening the estimated time for trial.

10    **15.    Settlement Prospects and Whether Court Assistance is Needed.**

11       At this time, the parties are unable to quantify the prospects for settlement.

12    However, the parties are considering mediation of this case.

13    **16.    Any other matters that will aid the Court and parties in resolving this**

14    **case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil**

15    **Procedure 1.**

16       As outlined in Paragraph 11(a), the parties agree that certain materials exchanged

17    in the Arbitration and Italian Action may be used in the current litigation.

18       *ASU's Position*: As explained above, the Court should not appoint a special

19    master or technical expert for this case.  The structure of the disputed compound, and the

20    uses of the compound is well known and perfectly described.  The parties' retained

21    experts will be sufficient to explain the same.  SeaGen's proposal will merely drive up

22    expenses, and cause delay.

23       *SeaGen's Position*: Additionally, SeaGen respectfully suggests that appointing

24    a special master or a technical expert would aid the Court and the parties in resolving the

25    patent-related issues in this action, particularly those related to the doctrine of equivalents.

26    Additionally, SeaGen suggests that a technical tutorial would be helpful to inform the

27    Court regarding the alleged inventions claimed in the '483 patent and regarding SeaGen's

28    ADCETRIS® and MMAE.

Finally, SeaGen is aware that Hon. Neil Wake is a graduate of Arizona State University and a member of the Board of Visitors of the University Of Arizona School Of Law both of which operate under the auspices of the Arizona Board of Regents. SeaGen also notes that this lawsuit already has been reassigned twice and hopes this Court is comfortable proceeding so that the matter need not be reassigned again.

Dated:  July 18, 2014

Seattle Genetics, Inc.

By its attorneys,

s/ James G. Gilliland, Jr.
**KILPATRICK TOWNSEND**
**STOCKTON LLP**
James G. Gilliland, Jr.
jgilliland@kilpatricktownsend.com
Bonnie M. Grant
bgrant@kilpatricktownsend.com
Two Embarcadero Center, Eighth Floor
San Francisco, CA  94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Susan M. Spaeth
sspaeth@kilpatricktownsend.com
Matthew J. Meyer
mmeyer@kilpatricktownsend.com
1080 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 326-2400
Facsimile: (650) 326-2422

Dario Machleidt
dmachleidt@kilpatricktownsend.com
1420 Fifth Avenue, Suite 4400
Seattle, WA 98101
Telephone:  (206) 467-9600
Facsimile:  (206) 623-6793

**ROSKA DeWULF & PATTEN, PLC**
John E. DeWulf/#006850
dewulf@rdp-law.com
Jennifer A. Stevens/#024655
jstevens@rdp-law.com
One Arizona Center
400 East Van Buren, Suite 800
Phoenix, AZ 85004
Telephone:  602-256-6100
Facsimile:  602-256-6800

Attorneys for Defendant and
Counterclaimant Seattle Genetics, Inc.

The Arizona Board of Regents for and on
behalf of Arizona State University

By its attorneys,

s/ C. Mark Kittredge
C. Mark Kittredge
MKittredge@perkinscoie.com
K. Reed Willis
RWillis@perkinscoie.com
**PERKINS COIE LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  (602) 351-8000
Facsimile:  (602) 648-7032

William W. Adolfsen
WAdolfsen@perkinscoie.com
**PERKINS COIE LLP**
One East Main Street, Suite 201
Madison, Wisconsin  53703
Telephone:  608.663.7460
Facsimile:  608.663.7499

Attorneys for Plaintiff and
Counterdefendant
The Arizona Board of Regents for and on
behalf of Arizona State University

-16-

## EXHIBIT A: PROPOSED SCHEDULE

| Event | ASU's Proposal | SeaGen's Proposal |
|---|---|---|
| Arizona's Disclosure of Asserted Claims Due | | July 25, 2014 |
| Arizona's Disclosure of Infringement Contentions and supporting document production due | | August 22, 2014 |
| Seattle Genetics' Invalidity Contentions and supporting document production due | | October 8, 2014 |
| Exchange of Proposed Terms for Construction due | | October 24, 2014 |
| Exchange of Proposed Claim Constructions and Extrinsic Evidence due | | November 11, 2014 |
| Joint Claim Construction and Prehearing Statement to be filed | | November 25, 2014 |
| Claim Construction Discovery cut-off | | November 25, 2014 |
| Arizona's Opening Claim Construction brief due | | December 17, 2014 |
| Seattle Genetics' Responsive Claim Construction brief due | | January 9, 2015 |
| Reply Claim Construction brief due | | January 23, 2015 |
| Claim Construction Hearing | | February 6, 2015 |
| Estimate for claim construction ruling | | ~Late March 2015 |
| Deadline for Joining Parties and Amending Pleadings. | | October 23, 2014 |
| Advice of counsel documents and privilege log due | | April 4, 2015 |
| Last day to serve all discovery | | March 20, 2015 |
| A date by which the parties shall have engaged in good faith settlement talks | November 14, 2014 | April 17, 2015 |
| Report on Settlement Talks filed | | April 24, 2015 |
| End of fact discovery | September 5, 2014 | May 5, 2015 |

| Event | ASU's Proposal | SeaGen's Proposal |
|---|---|---|
| Plaintiffs shall provide full and complete expert disclosures on the issues on which they bear the burden of proof as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure. | September 19, 2014 | May 22, 2015 |
| Defendants shall provide full and complete expert disclosures on the issues on which they bear the burden of proof as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure | N/A (to be exchanged September 19, 2014) | June 17, 2015 |
| Rebuttal expert disclosures, if any. Rebuttal experts shall be limited to responding to opinions stated by initial experts. | October 3, 2014 | July 1, 2015 |
| End of expert discovery, including depositions | October 15, 2014 | July 18, 2015 |
| A deadline for filing dispositive and Daubert motions | October 31, 2014 | August 1, 2015 |
| Joint Proposed Pretrial Order due (if no MSJs filed; otherwise, date will be set later by the court) | | October 15, 2015 |
| Final pretrial conference | | ~Late October 2015 |

1
**CERTIFICATE OF SERVICE**

2      ☒      I hereby certify that on July 18, 2014, I electronically transmitted the

3    attached documents to the Clerk's Office using the CM/ECF System for filing and

4    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5        John E. DeWulf
         dewulf@rdp-law.com
6        Jennifer A. Stevens
7        jstevens@rdp-law.com
         Roshka DeWulf & Patten, PLC
8        One Arizona Center
9        400 East Van Buren Street, Suite 800
         Phoenix, Arizona  85004
10
         James G. Gilliland, Jr. (*admitted pro hac vice*)
11       jgilliland@kilpatricktownsend.com
         Kilpatrick Townsend & Stockton LLP
12       Two Embarcadero Center, 8th Floor
13       San Francisco, California  94111

14       Susan M. Spaeth (*admitted pro hac vice*)
         sspaeth@kilpatricktownsend.com
15       Matthew J. Meyer (*admitted pro hac vice*)
         mmeyer@kilpatricktownsend.com
16       Kilpatrick Townsend & Stockton LLP
17       1080 Marsh Road
         Menlo Park, California  94025
18

19      ☒      I hereby certify that on July 18, 2014, I served the attached document by

20    first class mail on Judge Neil V. Wake, United States District Court of Arizona, 401 West

21    Washington Street, Phoenix, Arizona 85003-2118.

22                                    s/ Janet Roe

23    LEGAL122798500.1

24

25

26

27

28